COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-15-00342-CR |
| Appellant, | § | Appeal from the |
| v. | § | 41st Judicial District Court |
| | § | of El Paso County, Texas |
| LINDSEY HRADEK, | § | |
| Appellee. | § | (TC# 20130D00417) |
| | § | |

**DISSENTING OPINION[1]**

In soccer, the term "own goal" is used to describe the regrettable moment when a player knocks a goal into their own net, scoring a point for the opposing team. Such goals are the stuff of nightmares, and particularly so, for defenders principally assigned the responsibility of protecting their team's net from this outcome. As a metaphor, however, an own goal aptly describes actions that lead to counter-productive results. Unusual as it is in this context, I find the own goal concept comes easily to mind when reading the record of this case.

---

[1] I respectfully dissent from the Court's reversal of the trial court's grant of a new trial based on a claim of ineffective assistance of counsel as pertaining to two items of evidence: the CPS drug test and the jail call recording. Otherwise, I join the Court's holding in all other respects with regard to the determination that there is an absence of record support for the grant of a new trial on the other grounds asserted related to the voir dire examination of defense counsel, jury charge error, defense counsel's failure to investigate, and the inadequate preparation for trial.

Appellee Lyndsey Hradek filed a motion for new trial after a jury convicted her of the lesser included offense of reckless injury to a child by omission. Among multiple claims, Hradek asserted she was denied the right to effective assistance of counsel, as afforded by the Sixth Amendment of the United States Constitution. U.S. CONST. AMEND VI; *see also* Tex. Const. art. I, § 10. In *Strickland v. Washington*, the United States Supreme Court elaborated on the system-wide importance of this protected right. 466 U.S. 668, 686 (1984). "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Id.* at 685. In other words, the very purpose of the constitutional right to counsel is to ensure the defendant receives "a fair trial, a trial whose result is reliable." *Id.* at 687; *Young v. State*, 991 S.W.2d 835, 837 (Tex. Crim. App. 1999).

Based on formal appearances entered at trial, the record shows Hradek was represented by three attorneys, Dave Contreras, Nicole Maesse, and Sara Priddy of the El Paso County Public Defenders' Office. In reality, however, Contreras performed as lead counsel throughout, directing nearly all aspects of the defense team's trial preparation and representation. And, to that extent, Maesse and Priddy were merely assigned, by Contreras, to perform narrow and limited tasks.[2] In part, Hradek's claim of ineffective assistance of counsel was based on conduct related to two items of evidence: (1) Defense Counsel Contreras eliciting testimony about an inadmissible drug test (the CPS drug test); and (2) Defense Counsel Maesse requesting, at the direction of Defense Counsel Contreras, the playing for the jury of a 43-minute jail-call-recording, although unaware of its content (State's Exhibit 51). On appeal, the State claims and the majority agrees the trial

---

[2] At the motion for new trial hearing, attorney Maesse testified that co-counsel Priddy was only assigned to work on the case about three weeks before trial. Maesse was scheduled to be out of town attending a seminar on the date the trial court set for the start of the jury trial. Attorney Priddy was assigned to take notes for Contreras during voir dire. Also, she questioned a witness called by the State to authenticate a jail-call recording, but not when the call was admitted into evidence.

court abused its discretion in granting a new trial to Hradek even with regard to this evidentiary error. Standing apart from the majority, I would conclude the State failed to carry its appellate burden to show that no reasonable view of the record supports the trial court's ruling as to the prejudicial harm resulting. Instead, I would conclude the record established such self-defeating conduct by Hradek's defense counsel that this deficiency in whole resulted in the admission of highly prejudicial evidence. As well, I would conclude the totality of these circumstances deprived Hradek of her constitutional right to receive a fair trial, that is, a trial whose results may fairly be viewed as being reliable. *See Strickland,* 466 U.S. at 687.

First, Defense Counsel Contreras not only elicited, but actually developed detailed testimony about the inadmissible drug test, even though the State readily acknowledged it would not seek its admission. And while doing so, he refused to accept remedial measures offered by the court, and further failed to elicit testimony, or otherwise inform the jury, of the State having stated in open court, outside the jury's presence, that the test was not scientific. Second, without knowing the content of the jail-call-recording, but following Contreras's instruction, Defense Counsel Maesse asked the trial court to play the entirety of the call for the jury. Based on this error alone, the jury was presented with multiple incidents of overly prejudicial and inadmissible evidence without objection or scrutiny. On this record, I would conclude that defense counsel's deficient performance deprived the trial of the adversarial testing relied on by courts to ensure a constitutionally fair trial. Not unlike a defender scoring an own goal, defense counsel's conduct led to the counter-productive result of her own counsel bringing forth harmful evidence against her without effective assistance of counsel. Given no abuse of discretion has been shown, I would affirm the grant of a new trial.

Respectfully, I dissent.

3

## I. Trial Court Authority to Grant a New Trial

### A. Standard of Review

The standard of review when a trial court grants a motion for a new trial is abuse of discretion. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014); *State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). The State carries the burden to prove the trial court erred in granting a new trial to the defendant. *State v. Belcher,* 183 S.W.3d 443, 447 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Lee v. State*, 322 S.W.2d 260, 262 (Tex. Crim. App. 1958)). To determine whether the trial court abused its discretion, an appellate court must view the evidence in the light most favorable to the ruling and uphold it if it falls within the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). A reviewing court may not substitute its own judgment for that of the trial court, but rather, it must decide whether the trial court's ruling was arbitrary or unreasonable. *Id.* As fact finder, the trial court is the sole judge of the credibility of witnesses testifying at a hearing including a hearing held on a motion for new trial. *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013). The trial court's determination of historical facts, as well as mixed questions of law and fact that turn on an evaluation of the credibility and demeanor of witnesses, are reviewed for an abuse of discretion, while affording almost total deference to findings supported by the record. *Id.*; *State v. Guzman*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

When the trial court makes explicit fact-findings, as is the case here, the reviewing court must determine whether the evidence—when viewed in the light most favorable to the ruling—supports the trial court's findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). The prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). A reviewing court may uphold the trial court's ruling if it is supported by

the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

**B. Applicable Law**

On review of a trial court's grant of a new trial, the Court of Criminal Appeals has instructed that no abuse of discretion occurs where a defendant (1) articulates a valid claim in the motion for new trial, (2) produces evidence or otherwise points to record evidence that substantiates the legal claim, and (3) shows prejudice to substantial rights under the harmless error standards of the Texas Rules of Appellate Procedure. *See Thomas,* 428 S.W.3d at 105; *Herndon*, 215 S.W.3d at 909. Hradek's motion for new trial asserted, among other claims, that she was denied the right to effective assistance of counsel. The Sixth Amendment to the United States Constitution provides that a person accused of a crime shall enjoy the right to the assistance of counsel. U.S. CONST. AMEND VI; *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963); *Hughen v. State*, 297 S.W.3d 330, 334 (Tex. Crim. App. 2009). This right is similarly provided for by section ten of Article 1 of the Texas Constitution. *See* TEX. CONST. art.1, § 10. "The right to counsel requires more than the presence of a lawyer; it necessarily requires the right to effective assistance." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

The right to effective assistance of counsel is needed to protect the fundamental right to a fair trial. *Strickland*, 466 U.S. at 687; *see also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland* as the applicable standard under the Texas Constitution). "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Strickland*, 466 U.S. at 685. The central purpose in examining any claim of ineffective assistance of counsel is to ensure that the defendant has been accorded due process, "not to grade counsel's performance." *Id.* at 697.

*Strickland's* two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a reliable result. *Thompson v. State*, 9 S.W.3d 808, 812–13 (Tex. Crim. App. 1999). Under *Strickland*, a defendant must establish: (1) that defense counsel's performance was constitutionally deficient; and (2) that there is a reasonable probability that, but for her attorney's deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812–13. When both prongs are shown, a court may conclude "that a defendant's conviction resulted from a breakdown in the adversarial process that renders the result unreliable." *Boyd v. State*, 811 S.W.2d 105, 109 (Tex. Crim. App. 1991) (citing *Strickland*, 466 U.S. at 697).

Here, the State does not challenge any of the trial court's findings and conclusions regarding the first prong of *Strickland* pertaining to both the testimony regarding the CPS drug test and the playing of the 43-minute jail call. Even though the State does not concede that defense counsel's eliciting of testimony about the inadmissible drug-test constituted deficient performance, nevertheless, it advances no challenge against the trial court's deficiency ruling. Thus, any complaint about that ruling is waived. *See* TEX. R. APP. P. 38.1(i). With the jail-call, however, the State readily acknowledges that defense counsel's failure to review the entire jail call before agreeing to its admission into evidence, and the playing of the call for the jury, "admittedly constitute[ed] egregiously deficient performance." In either case, deficient performance of counsel has been established as to both items of evidence.

In short, only the second prong of *Strickland* is at issue based on the State's briefing.

## II. Prejudicial Effect of Counsel's Deficient Performance

*Strickland's* second prong requires a showing that defense counsel's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. When addressing the prejudice prong, the

Court of Criminal Appeals described that, "the defendant must show only that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005) (quoting *Strickland*, 466 U.S. at 687). Ordinarily an appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Thompson*, 9 S.W.3d at 813. Courts examine counsel's errors not as isolated incidents, but in the context of the overall record. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). Regarding the two items of evidence, the State contends that no prejudice resulted from counsel's eliciting of the CPS-drug test. And only minimal prejudice, at most, resulted from the egregiously deficient performance related to the jail-call recording.

## A. Prejudicial effect of eliciting testimony about the unreliable CPS test result

### 1. Findings of Fact and Conclusions of Law

For context and background, the relevant factual findings and conclusions of law are provided. The trial court reached the following unchallenged factual findings pertaining to defense counsel's[3] conduct in eliciting testimony about the inadmissible CPS drug test:

> 10.     Defense counsel Contreras elicited evidence regarding an otherwise inadmissible drug test by CPS that indicated cocaine usage by the Defendant.

> 11.     Defense counsel Contreras testified he was upset at being blamed for eliciting testimony regarding an otherwise inadmissible drug test by CPS that indicated cocaine usage by Defendant.

> 12. Defense counsel Contreras was not credible in his explanation as to why he elicited evidence regarding an otherwise inadmissible drug test by CPS that indicated cocaine usage by the Defendant.

---

[3] As earlier stated, Defense Counsel Contreras was the sole attorney that dealt with the issue of the CPS drug test, including questioning of the State's witness and asserting arguments to the trial court. Thus, for purposes of brevity, all references to defense counsel's conduct in eliciting extended details about the inadmissible drug test refer to conduct by Defense Counsel Contreras only.

7

13. Defense counsel Contreras failed to provide any credible reasonable trial strategy as to why he elicited evidence regarding an otherwise inadmissible drug test by CPS that indicated cocaine usage by the Defendant.

.        .        .

28. State's Exhibit 51 contained a statement by Defendant that she used cocaine.

Based on those findings, the trial court reached the following relevant conclusions of law regarding the CPS test evidence and the overall strength of the State's evidence:

13.    Defense counsel's cross examination eliciting evidence of cocaine intoxication and an otherwise inadmissible positive drug test for cocaine fell below an objective standard of reasonableness.

.        .        .

16. Although a directed verdict was not granted, the State's evidence of conduct by omission and the requisite state of mind pled in the indictment of *intentional* and *knowing* was marginal.

17. Absent the above-recited findings of fact and conclusions of law, there is a reasonable probability that the result of the proceeding would have been different.

## 2. Analysis

On appeal, the State argues, and the majority agrees, that no prejudice resulted from defense counsel's deficient performance in eliciting evidence of an inadmissible drug test. The State argues the CPS drug test was merely cumulative of Hradek's admission of cocaine use, among other comments she made while talking to her mother on the jail-call. The State points out the trial court had already indicated it would permit the State to admit at trial a snippet of the call with Hradek's comment of cocaine use. I disagree that the record supports the State's characterization of the evidence.

Before opening statements and outside the presence of the jury, defense counsel asked the trial court for clarification on the evidence that referenced cocaine use. Defense counsel reminded the court that he had filed a motion to exclude such evidence. He indicated he did not see the

8

relevance of that evidence particularly where the State had charged his client with purposefully ignoring her child with the intent to cause the child harm. The trial court advised it would permit the State to admit two references as follows: (1) a comment by Hradek on the jail-call recording; and (2) a statement from the co-defendant of the case.

Yet, despite these boundaries, the record confirms that defense counsel elicited evidence of an inadmissible drug test while questioning Detective Aman, an investigator of the El Paso Police Department. On direct-examination, Detective Aman testified he had arrived on scene the morning of the child's death. He explained it was a standard procedure of the Crimes Against Persons unit to investigate the death of a child call when the death occurs outside a physician's presence. He testified about his investigation of the case. He explained that he saw the child's body in the ambulance when he first arrived on scene. He noted signs of "lividity," which is a pooling of blood that occurs after death, and it seemed pronounced on the child's head, right arm, and right leg. From there, he walked through the apartment. In the bedroom that Hradek shared with the child's father, he saw a queen size bed with a baby crib positioned at the foot of the bed. He also saw a pile of pillows with an overturned child's car seat on one side of the bed. At the close of questioning, the prosecutor asked him to describe the nature of the offense that he ended up investigating. Detective Aman responded, "It was – it was injury to a child by negligence, by – ended up in murder. I mean, death of a child." On cross-examination, defense counsel followed Aman's last answer and asked, "It started out as injury to a child caused by negligence, and then it turned [ ] into murder?" Aman answered, "Well, I don't – well, I was – I was at the scene, so, at the end, it was a murder." Defense counsel next asked, "Okay. So you didn't find any evidence whatsoever of an intentional act, correct?" Aman responded, "we found evidence that showed that this was – the Defendant caused the child's death." Defense counsel responded, "Oh, really? By

9

just seeing a car seat on the floor?" Aman retorted, "No, not just by seeing the car seat on the floor, but connection – the connection of the car seat with the injuries of the child. And then, also, the – the state of intoxication of the Defendant."

Defense counsel next pointed out that Aman had not mentioned any intoxication in his statement. Aman started to respond with a narrative answer stating, "There was a –." Defense counsel interrupted by stating, "[o]bjection." Without further detail of that objection, or asking for a ruling, he then stated, "Answer my question. You never answered – you never put that in there, that she was intoxicated." Aman responded, "There was cocaine intoxication." Although the answer violated the trial court's limine order, defense counsel failed to object. Instead, with an open-ended follow up question, he asked "How did you know?" Aman responded that, "Crimes Against – or the CPS did a test on [Hradek] and her husband . . . And that showed there was." At that point, the prosecutor objected and asked to approach the bench wherein an extended bench conference ensued.

During that conference, the prosecutor informed the judge that the CPS drug test was *not* admissible in evidence unless the defense itself wanted to bring it in. The trial court warned defense counsel to drop the issue because his questioning would force the witness to talk about the test. The judge warned defense counsel not to elicit testimony regarding something that is otherwise not admissible. After defense counsel protested that he had not elicited the response, the trial court called for a break to review the record. The jury was excused from the courtroom.

After reviewing the record with counsel, the trial court informed defense counsel that it remained concerned that an evidentiary matter had gotten before the jury in response to his own questioning, and without him asserting any objections. The trial court further inquired of defense counsel: "So the question is, you are wanting to proceed forward with that evidence, despite its

inadmissibility, because you want to clarify it with the jury?" Defense counsel responded that he needed an instruction. The trial court offered, "I can instruct the Jury to disregard that evidence and we move on." Defense counsel added he would then ask for a mistrial. The judge asked for defense counsel to first pick what he wanted to do. He chose a limited instruction. The State responded it would leave it up to the court.

Defense counsel then brought up to the judge that Aman had put it in his report that he did not see any evidence of drugs on the scene. He asserted he was not opening the door to the evidence. The trial court asked again whether defense counsel wanted to continue with that line of questioning—that is, to impeach on a CPS test that is otherwise inadmissible, and the court could instruct the jury to disregard—or did he just want it disregarded. Defense counsel repeated that he wanted the court to tell the jury to disregard the evidence. The trial court replied, "And you move on. But then you move on." As defense counsel protested, the trial court explained the defense could not have both an instruction to disregard evidence yet also continue with a line of questioning wherein he attempted to further clarify and impeach the witness on the very same evidence. After extended dialogue with the judge, defense counsel clarified that he would ask for the instruction and move on. The trial court then recessed for lunch.

Upon reconvening, the trial court asked whether defense counsel had anything to put on the record outside the presence of the jury. Reversing course, defense counsel responded that he intended to proceed with his questioning based on the court's ruling that the cocaine was going to come in anyway. The prosecutor responded: "Well, Judge, I guess if the Defense wants to get it in, but we believe the CPS test is inadmissible under any circumstances. I mean, we can't base it on science." Defense counsel assured the court he could "deal with it." The trial court inquired whether the State had a report or something available with regard to the evidence. The prosecutor

reiterated that a CPS worker had been pre-trialed but the State had no plans to call the witness as the evidence was not admissible. The trial court pointed out to defense counsel that the CPS reference was not going to come in unless the defense continued going forward with the drug test reference. After further conversation, defense counsel declared, "We're just going to go into the cocaine. That's it. Why would we hide anything from the Jury?" When trial continued with the jury present, defense counsel continued his cross-examination. Based on his questioning, Detective Aman testified that he had formed a belief of Hradek being intoxicated not from the scene but based on him being told later that Hradek had tested positive for cocaine use within 48 hours of testing. He further testified he included that information in his affidavit to obtain an arrest warrant of Hradek.

On appeal, the State argues the evidence elicited from Detective Aman was merely cumulative of Hradek's admission of cocaine use during her recorded conversation on the jail-call. The State thus argues that no prejudice resulted to Hradek from counsel's deficient performance as to the drug-test evidence. Hradek counters the State's argument is misplaced. Because the drug-test evidence differs materially from her comment on the call, she argues the inadmissible drug-test evidence was not cumulative. I agree.

Generally, it is true that cumulative testimony cannot form the basis of an ineffective assistance of counsel claim. *See United States v. Harris*, 408 F.3d 186, 191 (5th Cir. 2005) ("This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel."). In other words, the erroneous admission of evidence is harmless when the same facts are shown by other evidence properly admitted elsewhere in trial. *See Leday v. State*, 983 S.W.2d 713, 717–18 (Tex. Crim. App. 1998). It is also true, however, that not all evidence of overlapping nature will qualify as being cumulative. Where inadmissible

evidence merely overlaps with other evidence it will not necessarily preclude relief on an ineffective assistance of counsel claim. *See Harrison v. Quarterman*, 496 F.3d 419, 426 (5th Cir. 2007) (finding that a failure to interview a potential eyewitness supported an ineffective assistance of counsel claim based on the existence of material differences in the substance of the excluded testimony from the admitted testimony).

Here, there are significant differences between Hradek's admission of drug use on the jail call and Detective Aman's testimony about a non-scientific CPS drug test. On the call, Hradek commented to her mother, "[t]he only thing I did wrong is do cocaine when my son was alive. That's the only thing I did wrong." Hradek's jail call statement made no mention of any time frame other than referencing "when my son was alive." But for the deficiency in defense counsel's performance, the jury would not have heard what appeared to be scientific confirmation, from a CPS test, finding that Hradek had tested positive for use of cocaine within 48 hours of the charged incident.

Additionally, due to defense counsel's more extended questioning, Detective Aman further cemented the purported reliability of the CPS drug test by asserting he had relied on it to obtain an arrest warrant. That information had no relevance to any contested issue of trial. Based on this testimony, the jury could infer that a judge issuing a warrant had regarded the test as being reliable. Most prejudicial of all, the jury never learned from Aman, or any other witness, that the State had repeatedly acknowledged outside the jury's presence that the CPS test was not scientific. All of these distinctions support the trial court's conclusion that the evidence was not cumulative of the other evidence despite the overlap of the fact that both pertained to cocaine use. *See Harrison*, 496 F.3d at 426. The timing of Hradek's cocaine use was clearly important to the State, as the prosecutor repeatedly maintained in closing arguments that Hradek had "intentionally and

knowingly" used cocaine rather than provide care to her child. The State used the context of the additional evidence to attack defense counsel's argument that Hradek was a loving and caring mother arguing, "[d]oting mothers don't take cocaine while they're taking care of their child."

Viewing the evidence in support of the trial court's ruling, as required by our standard of review, the admission of the unscientific test result administered by CPS—which purportedly established the use of cocaine within 48-hours—clearly prejudiced Hradek's defense. Thus, I would conclude the State failed to establish on this record that no prejudice resulted from defense counsel's deficient performance pertaining to the eliciting of testimony regarding an inadmissible CPS drug test.

## B. Prejudicial Effect of the Content of the Call

### 1. Findings of Fact and Conclusions of Law

Again, for context, the relevant factual findings by the trial court pertaining to the jail call are provided. The trial court reached the following unchallenged findings of fact:

> 2. Attorney Nicole Maesse was out of town for two weeks immediately prior to the jury trial, including the day of voir dire, and had not worked on any preparation for the trial during that time.
>
> .        .        .
>
> 4. Defense counsel Maes[s]e was credible when she testified that she discussed trial strategy with defense counsel Contreras only once nearly two years prior to the jury trial.
>
> 5. Defense counsel Maes[s]e was credible when she testified that she was not aware of the trial strategy up until the day of jury trial.
>
> 6. Defense counsel Maes[s]e was credible when she testified that she did not feel she was prepared for trial.
>
> .        .        .
>
> 14. During the guilt-innocence stage of the trial, the State sought to admit only a portion of State's Exhibit 51, an excerpt of a recorded telephone call between Defendant and her mother, Whitney Hradek, which occurred while Defendant was

14

incarcerated in the El Paso County Detention Facility. In this excerpt, Defendant admitted to the use of cocaine.

15.     The defense requested that the entire State's Exhibit 51 (a 43 minute recorded phone call) be admitted, rather than the limited excerpt as requested by the State.

16.     Absent the request by the defense, no other portions of the phone call would have been admitted.

17.     Defense counsel Maes[s]e did not listen to the entire recorded phone call contained in State's Exhibit 51 prior to it being offered and admitted.

18.     Defense counsel Maes[s]e requested that the entire recording be admitted despite never having listened to the entire recording.

19.     Defense counsel Maes[s]e was not familiar with the contents of State's Exhibit 51.

20.     Defense counsel Contreras was not credible when he testified that he listened to the entire phone call prior to it being admitted.

21.     Defense counsel Contreras was credible when he testified he only heard a 'snippet' of State's Exhibit 51.

.          .          .

33.     Defense counsel Contreras testified he realized 'the whole thing' was bad, referring to State's Exhibit 51.

.          .          .

36.     Defense counsel failed to provide any credible reasonable trial strategy as to why they requested that the entire phone call be admitted.

.          .          .

45.     Defense counsel Contreras testified he strongly believed there was insufficient evidence of the elements of the offense, namely that there was an 'omission' by defendant that occurred with the 'intentional' or 'knowing' mental state.

Based on those factual findings, the trial court reached the relevant four conclusions of law regarding the prejudicial effect of the admission of the 43-minute jail-call recording:

15

1.	The additional portions of the recorded phone call in State's Exhibit 51 contained statements by Defendant and her mother Whitney Hradek that were inadmissible pursuant to Texas Rules of Evidence.

2.	The probative value of the additional portions of State's Exhibit 51 admitted by defense counsel were substantially outweighed by the unfair prejudice to the defense and were highly inflammatory.

3.	The additional portions of the recorded phone call in State's Exhibit 51 contained statements by Whitney Hradek that were inadmissible pursuant to Texas Rules of Evidence.

.	.	.

17.	Absent the above-recited findings of fact and conclusions of law, there is a reasonable probability that the result of the proceeding would have been different.

### 2. Analysis

On appeal, the State does not challenge the trial court's determination that multiple statements exchanged on the jail-call were inadmissible pursuant to the Texas Rules of Evidence. Instead, the State contends the evidence was minimally prejudicial, at most, or otherwise cumulative of other admissible evidence. I disagree.

Ordinarily, when deficient representation consists of defense counsel's failure to object to inadmissible evidence offered by the State, a reviewing court would be required to consider the resulting harm. In doing so, courts consider several factors such as the nature, weight, and focus of the evidence admitted as a result of counsel's error; the role the evidence played in the State's final argument; and the relative role it played in the outcome of the trial. *E.g.*, *Ex parte Menchaca*, 854 S.W.2d 128, 133 (Tex. Crim. App. 1993). In ruling on the motion for new trial, the trial court followed the same approach. It also considered the testimony from Hradek's two former defense counsel who themselves described the prejudicial harm resulting from the playing of the recording in the context of expected standards imposed generally on defense counsel. On prejudicial harm, no contrary testimony was offered by the State.

16

At the evidentiary hearing, both Defense Counsel Contreras and Maesse readily acknowledged that extraneous-type evidence would ordinarily be challenged at trial when presented by the prosecution. As Contreras explained, objections are lodged against such evidence due to concerns that jurors could convict a defendant merely because of their character or for being a bad person. He confirmed that defense attorneys ordinarily want to avoid that result. The way to do so is to keep out evidence of extraneous offenses or of bad conduct. In fact, that was his reasoning for why he was trying to keep out any references to cocaine, or to Hradek working as a dancer or stripper. He intentionally chose jurors who were women with children as he had wanted the defendant to look like a mother.

Moreover, Contreras and Maesse both testified they had experience representing defendants at trial to include preparing their clients for proper courtroom demeanor. For example, Maesse testified she would advise a client not to use curse words in court, not to use words or phrases such as "f*** this" or "f*** that," and to not look disinterested. The underlying reason for these instructions is that such behavior would not present the defendant in a good light and may hurt the client's case. Additionally, both Contreras and Maesse testified they would not allow admission of evidence that their client may have anger issues, that she considered pleading guilty to charges, or that she was detained in jail. Both defense counsel testified these matters would be prejudicial and could be used by a jury to infer guilt.

Maesse further testified she would not allow a witness to come into court and say the witness thinks a defendant is lying and being untruthful, or that a witness thinks a client may have done something to hurt her child even though she may not have done so intentionally. Also, she would not allow a lay witness to weigh in on evidence or otherwise opine about the strength of the State's evidence against the defendant. These are all comments she would affirmatively try to keep

17

out of a jury trial as they are "very prejudicial to [a] client." She testified that such comments are not relevant to assessing guilt or innocence. And they could lead a jury to believe a defendant is a bad person generally. When the State alleges a client allegedly caused a child to die, Maesse testified she would not want evidence presented that her client regretted having a baby or getting pregnant with the child. She agreed that that type of evidence could annihilate a defense case.

In ruling on the prejudicial harm resulting from the playing of the entire jail-call for the jury, the trial court listed multiple comments in support of its conclusion that the call contained inadmissible evidence that contributed to the resulting prejudice caused by defense counsel's performance. Given the State's argument that minimal prejudice resulted in the playing of the call, comments included in the content of the call are addressed in turn.

### a. Hradek's statements that she wished her son had never been born and that she wished she had never gotten pregnant (factual findings #22 and #23)

The record confirms that while Hradek spoke to her mother—while detained in jail following her arrest—she commented that everybody was now making her regret her son. In that context, she further stated, "I wish I had never had a baby," and, "I wish I had never gotten pregnant." When her mother angrily responds that she should not say things of that nature, Hradek replied: "How can I not . . . look at what I'm going through."

The State characterizes these comments as "admittedly displaying some degree of self-centeredness," but even so, they would not suggest to the jurors that Hradek had any culpable mental state, or any intent or desire to rid herself of her baby at any time before the baby died. Without citation to authority, the State argues the comments lacked a high degree of prejudice because they had the effect of "demonstrating Hradek's happiness with her life with the baby before the baby's death." The State argues the comments were only minimally prejudicial when properly examined in context. I disagree.

18

The State's argument simply undercuts the probative weight of the evidence without addressing the prejudicial harm resulting from defense counsel's deficient conduct. Pursuant to Rule 403, evidence that is merely calculated to arouse sympathy, prejudice or passion of the jury where it serves no other purpose related to a disputed issue, or to aid the jury in understanding the case, the probative value is substantially outweighed by a danger of unfair prejudice. *See* TEX. R. EVID. 403.

Here, the record shows that when Hradek expressed that she wished her child had never been born, or some equivalent form of that statement, her mother responded angrily and with disapproval. To suggest that a jury would react positively and believe that Hradek merely expressed a longing for a time when her life was happier does not eliminate the prejudicial nature of the impact. Moreover, the argument does not comport with how the State argued at trial. During the punishment phase, the State argued the evidence showed that Hradek was a self-centered mother who did not take proper care of her baby. The prosecutor expressly referred to statements by Hradek in which she "nonchalantly talk[ed] about regretting Colton." Warning the jury against falling for manipulation, the prosecutor claimed that Hradek was "all about herself." I would conclude the record supports the trial court's conclusion that such comments were more than minimally prejudicial to Hradek's case.

### b. Hradek's mother's statements that Hradek clearly hurt the baby (factual finding #25); that she was not taking the situation seriously (factual finding #24); and that she needed to tell the truth (factual finding #31)

The trial court's multiple factual findings related to the prejudice resulting from the deficient performance of playing the entire jail-call included the following: (1) Whitney Hradek stated, "I'm not saying you did anything intentionally, but clearly you hurt the baby;" (2) Hradek's

mother also commented "[Hradek is] not taking this seriously. This is not all about you;" and (3) Hradek's mother reminded her daughter to be truthful.

In context, the record shows that Hradek spoke to her mother about how she had met another detainee while in jail who had been given a personal recognizance bond. Hradek complained about not being treated similarly. Her mother responded by stating that the "difference" was that the other detainee's victim did not die. Her mother exclaimed, "Your baby died." When Hradek replies that Colton's death was ruled "accidental," her mother argues back (without a factual basis) that the death was only ruled "accidental" because Colton was found "upside down in a car seat." Continuing, Whitney Hradek chastises her daughter for not taking her situation seriously, reminding her that she had warned her at the time of her arrest that this was not the "end" of things, and that her life would "never be the same." Her mother further stated it might be best if Hradek did not bond out of jail, as there were a lot of "angry people out there," who were saying that Hradek was a "murderer," making it unsafe for her to be bonded out.

Asking Hradek to "look at all the circumstances," her mother questions her about how she would have felt if she had left Colton with a babysitter and "something" had happened to him. Hradek repeatedly complains that her mother is not on her side and that she is accusing her of hurting Colton. Although she assures her that she is not accusing her of "intentionally" hurting Colton, Whitney Hradek raises the possibility that the State may have evidence of Hradek's guilt, speculating that the child's father or paternal grandfather may have provided negative information to the police of which Hradek might not be aware. Her mother then suggests that Hradek needs to be honest with her attorneys to try to exonerate herself. Further commenting on the weight of the evidence, Whitney Hradek states "they have all the proof."

Trying to minimize the prejudicial harm of these statements, the State argues the context in which they were made show that Hradek's mother was not suggesting that Hradek was being flippant or callous about the death of her baby, but rather, that she was imploring her daughter to tell the truth. The State further asserts the comments were somewhat cumulative of comments made by the detectives when they interviewed Hradek about her case. Equating the tenor and nature of the investigators' questions, the State argues that Whitney Hradek's comments were like those of the detectives when questioning Hradek, which were admitted with the law enforcement recording, and were only minimally prejudicial. Regarding the State's characterization, I disagree.

At trial, a non-expert witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. TEX. R. EVID. 602. Unless excepted, the hearsay rule also excludes any out-of-court statement offered to prove the truth of the matter asserted. TEX. R. EVID 801(d), 802; *Walter v. State*, 267 S.W.3d 883, 889 (Tex. Crim. App. 2008). If qualified as an expert by knowledge, skill, experience, training, or education, a witness may testify in the form of an opinion if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. TEX. R. EVID. 702. No witness, expert or lay, is competent to voice an opinion about the guilt or innocence of a defendant. *Boyde v. State*, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974); *see also Fairow v. State*, 943 S.W.2d 895, 899 (Tex. Crim. App. 1997); *DeLeon v. State*, 322 S.W.3d 375, 383 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). The jury alone weighs the guilt or innocence of the accused based upon the instructions in the court's charge and the evidence admitted at trial. *Boyde*, 513 S.W.2d at 590.

Without personal knowledge, Whitney Hradek weighed in on critical aspects of Hradek's case easily leaving an impression with the jury that Hradek had not yet been truthful in her

explanations. Comments from Hradek's mother questioning Hradek's culpability and credibility, without proper foundation, carry a different weight and tenor than similar questions coming from police interviewers. Had Whitney Hradek taken the witness stand and asserted the same comments as she did in the call, her testimony would have drawn multiple objections, and error would result if overruled by the court. Her personal knowledge and expertise would have been a threshold issue for the trial court. *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012) ("[W]hether or not to admit evidence at trial is a preliminary question to be decided by the court." (citing TEX. R. EVID. 104(a))). Additionally, she would have been subjected to cross-examination which easily would have exposed her lack of personal knowledge of the disputed facts of the case. Instead, because of defense counsel's egregiously deficient representation, the comments were played to the jury without any objections, cross-examination, or adversarial scrutiny. No doubt, if timely objections were made, a trial court would commit error to allow such comments to be admitted. The record clearly supports the trial court's ruling that such comments were prejudicial to Hradek's case.

### c. Hradek's statement, "F*** the medical examiner," and other incidents of cursing (factual findings #26 and #32)

The trial court additionally made the following findings: (1) that the recording contained a statement by Hradek in which she states, "F--- the medical examiner;" (2) that the recording contained repeated instances of cussing by Hradek; and (3) that the recording contained a statement by Hradek that she used cocaine. The trial court included these comments in its conclusion that State's Exhibit 51 contained inadmissible evidence that contributed to the prejudice resulting from defense counsel's deficient representation.

On review of the recording, Hradek is heard cursing at her mother as they talked about various aspects of her case. Three examples are noteworthy. First, when Hradek complains her

situation is not fair, her mother asks, "was it fair to Colton what happened?" Responding, Hradek states, "why the f\*\*k would you say that?" Second, when speaking about the medical examiner's findings alleging that Colton had been upside-down in the car seat at the time of his death, Hradek responds: "Well, f\*\*k the medical examiner. F\*\*k him because he's wrong. . . . He's f\*\*king wrong." Third, Hradek further adds, "They don't have s\*\*t. They just put me in jail because I f\*\*\*ing did coke. And I know that's what it is. They don't have s\*\*t because there's nothing."

Although the State acknowledges that instances of cursing could have a negative impact on the jury, nonetheless, it contends that any such impact would be minimal because Hradek's speech demonstrated "the passion with which she believed in her innocence." Additionally, the State argues that Hradek benefitted from not having to take the stand and face cross-examination notwithstanding her use of "salty language." Relying on *Oeffner v. State*, the State contends that Hradek's use of such language is not an inherently bad act and any prejudicial effect was minimal. No. 14-98-00955-CR, 2000 WL 674916, at \*3 (Tex. App.—Houston [14th Dist.] May 25, 2000, pet. ref'd) (not designated for publication) (finding that evidence of appellant and his friends drinking prior to the offense did not constitute an inherently bad act).

Regarding her second reference to using cocaine (while cursing), the State argues the trial court had already ruled that this limited portion of the recording could be introduced by the State. Responding, Hradek asserts that only one reference to her use of cocaine had been previously ruled admissible, not the additional comment including her use of profanity. Hradek claims that the only portion of the call that was going to be admitted was the portion where she states, "[t]he only thing that I did wrong is do cocaine when my son was alive. That's the only thing I did wrong . . . And I should have never done that. But it was a mistake . . . People make mistakes. But I didn't – he wasn't in the car seat . . . He was next to me the whole night."

23

The record supports Hradek's argument that the reference to cocaine use that had been ruled admissible was one that included her comment that Colton was next to her the whole night. Thus, the State failed to establish that the trial court had ruled admissible the additional portion of the call in which Hradek made a second comment about her use of cocaine. With this second comment, Hradek admitted to such use while protesting her mother's reference to the medical examiner's allegation of her alleged misuse of the child's car seat. Absent her trial counsel requesting the admission of the entire recording, only the curse-free version of her comment about cocaine use would have been admitted. The record shows the additional reference to cocaine use would not have been admitted but for defense counsel's request to play the call in its entirety. During its closing argument, the State mentioned Hradek's use of cocaine several times. The record sufficiently supports the trial court's finding that these statements were prejudicial to Hradek's case.

### d. Hradek's statement that she should consider pleading guilty to the charges against her (factual finding #27)

The trial court found that the recording contained a statement by Hradek that she should have considered pleading guilty to the charges against her. The record shows that when Hradek's mother brought up the possibility that the State could "change" the charges on her, Hradek replied that maybe she "should just take the charges," lamenting that "it's going to be worse," if charges were so raised. Responding, Hradek's mother encouraged her to talk to her lawyer and see what "they think," and to trust in the process. Hradek agrees to speak with her lawyers, but then asks, "but what if it [the process] doesn't work?"[4] Downplaying the significance of Hradek openly

---

[4] Hradek additionally discusses the fact that she will not be eligible to work in jail as a trustee until she is "sentenced," she tells her mother that she will probably not be "sentenced for a long time," and her mother agrees. Whether the statement was made inadvertently or not, it is possible that the jury may have inferred that Hradek was assuming that she would be found guilty at trial.

commenting that she feared higher charges, the State argues that Hradek was "thinking out loud and expressing her frustrations" over her situation. In context with her protestations of being innocent, the State argues the jurors would not have taken Hradek's comment as any sort of admission of guilt. I disagree.

Evidence that a defendant engaged in plea negotiations or otherwise considered pleading guilty is not admissible given that a jury could infer that an innocent person would not consider pleading guilty. *See generally Bowley v. State,* 310 S.W.3d 431, 435 (Tex. Crim. App. 2010) (holding that evidence that the State made a plea offer to the defendant is excludable under Rule 403 and observing that public policy militates in favor of excluding plea offers); *Canfield v. State,* 429 S.W.3d 54, 74–75 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (recognizing that evidence that a defendant engaged in plea negotiations is generally not relevant to proving the elements of an offense and likely would have a substantial negative impact on the jury); *see also* TEX. R. EVID. 410(b)(4) (evidence of a "statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty or nolo contendere plea" is not admissible at trial).

Regardless of whether Hradek followed through with any such plea discussions, the fact that jurors heard comments from her about her fear of higher charges, and considered a plea of guilty, would clearly result in prejudice to Hradek as recognized by well-settled authorities. TEX. R. EVID. 410(b)(4); *Bowley,* 310 S.W.3d at 435. The trial court's finding on the plea discussion statements is supported by the record.

### e. Unsubstantiated suggestions of anger and mental-health issues (factual finding #30)

The trial court included a finding that "State's Exhibit 51 contained statements by [Hradek] that she had anger and mental health issues." The State argues that the trial court's finding was not

25

supported by the record and could not support any finding of ineffective assistance. The State asserts the trial court's finding is not supported by the record and cannot support a finding of ineffective assistance. Countering, Hradek asserts that the record will show it was Whitney Hradek who insinuated that her daughter had anger and mental health issues. Although the trial court mistakenly referenced the wrong speaker, Hradek argues factual findings supporting the court's ruling may be imputed. I agree.

The record shows that Whitney Hradek tells her daughter she believes she needs a psychiatric evaluation, implying that Hradek had anger control issues. Hradek disagrees and further states she did not want to be placed on psychiatric medication. In substance, Whitney Hradek's comments opine on Hradek's mental health without her having established any credentials or proper basis. Lacking proper foundation, the jury would not be equipped to understand the nature and significance of those comments or their relevance to issues of the case. Viewing the evidence in favor of the trial court's ruling, as required, these comments were not admissible in the form in which they were presented. Other than complain about the trial court's attribution to Hradek herself, the State provides no authority establishing the admissibility of the comments, or their lack of prejudice. I would conclude the record supports the trial court's implicit finding that counsel's deficient representation pertaining to these comments contributed to the prejudicial harm of the evidence.

### f. Discussion of Hradek's Employment as a dancer and a stripper (factual finding #29)

In its findings, the trial court found that State's Exhibit 51 contained statements by Hradek that she worked as a dancer and stripper. A second finding determined that defense counsel failed to provide any credible and reasonable trial strategy in his failure to ensure Hradek's statement did not contain any mention of her employment as a dancer. Moreover, the court found that Contreras's

failure to ensure that the State properly redacted the reference to Hradek's employment fell below an objective standard of reasonableness, and that Contreras provided no credible explanation for his deficient conduct. As well, the trial court found that this was one of the deficiencies that rendered his conduct ineffective, and prejudicial to Hradek's case.

On appeal, the State points out that there is nothing illegal about working at "a strip club," contending that such employment cannot be considered an "inherently bad act," subject to exclusion under Rule 404 of the Texas Rules of Evidence.[5] *See, e.g., Jaynes v. State*, 216 S.W.3d 839, 848–49 (Tex. App.—Corpus Christi 2006, no pet.) (holding that without a further showing of the groups' activities, evidence that the defendant was a member of two white-supremacy organizations was not evidence of an extraneous bad act); *Oeffner*, 2000 WL 674916, at *3 (evidence that defendant and his friends had been drinking alcohol prior to the offense is not an extraneous bad act, as such conduct did not violate any laws and is not inherently "bad"). The State next relies on *Silvestre v. State*, 893 S.W.2d 273, 274–75 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) for the proposition that because Hradek's employment at Foxy's was not "inherently bad," its prejudicial impact was minimal. The holding in *Silvestre*, however, is inapposite to the present situation.

In *Silvestre*, the defendant was accused of assault, and his defense at trial asserted mistaken identity. *Id.* Because the victim had described her assailant as having tattoos on his arms, the State sought to have the defendant display a tattoo he had on his arm to the jury. *Id.* The defendant protested that his tattoo contained the initials of a gang, and that showing the tattoo to the jury was highly prejudicial to his case. *Id.* at 275. In determining that the admission of the evidence was not

---

[5] Rule 404 of the Texas Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but may be admitted for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b).

more prejudicial than it was probative under Rule 403 of the Texas Rules of Evidence, the Houston court held that the trial court did not err by requiring the defendant to display the tattoo to the jury.[6] *Id.* In particular, the court noted it was highly relevant to the question of the defendant's identity. *Id.* Also, the court found the prejudicial impact of allowing the jury to see it was minimal given there was no showing the jury would recognize it as being gang related. *Id.*

Here, the trial court agreed with defense counsel's argument that Hradek's place of employment or work as a dancer had *no* probative value to contested issues, and its admission would have served no purpose other than to prejudice the jury against her. In briefing, even the State recognizes that "some people might perceive such work as bad or immoral." This was in fact the very concern that defense counsel had expressed, and the very reason the trial court had ruled, that evidence of this nature was inadmissible at trial.

Although the State seeks to characterize the reference to Hradek's employment as being "quick" and isolated in nature, defense counsel had already erred by allowing admission of a portion of the phone conversation wherein Hradek promised her mother she would not go back to "dancing," if released on bond. Given the references to both "Foxy's" and "dancing," I do not believe it would have required much effort on the jury's part to conclude that Hradek had in fact worked as an exotic dancer.

And finally, the State argues that any potential the jury might have misused this evidence to make an "improper character-conformity inference" was lessened, eliminated, or both, by the general instruction in the jury charge instructing the jurors that they could only consider evidence of extraneous acts "in determining the motive, opportunity, intent, knowledge, plan or scheme of

---

[6] Rule 403, which provides that "[t]he court may exclude relevant evidence its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

the Defendant, if any, in connection with the offense, if any, alleged against [her] in the indictment in this case, and for no other purpose." In most instances, a proper instruction of this nature can minimize the harm done by the admission of improper evidence of an extraneous act. *See, e.g.*, *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996); *see also Hung Phuoc Le v. State*, 479 S.W.3d 462, 471–72 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (recognizing that, in the context of a Rule 403 analysis a limiting instruction minimizes and holds in check any improper character-conformity inference from an extraneous offense or bad act). But here, the State's argument presents a dilemma. By arguing that Hradek's employment at Foxy's was not an extraneous act, it remains unclear whether the jury would have understood the instruction had applied to this employment evidence. The instruction did not expressly warn the jury it could not consider the evidence for character-conformity purposes—the very danger that concerned the defense—thus, it remained unclear how the instruction would be effective under the circumstances.[7] Moreover, defense counsel never requested an instruction to disregard the evidence, which in the final analysis, might have been the best tactic for minimizing any resulting prejudice from the introduction of this evidence. While I would not conclude that the introduction of this evidence, standing alone, would ordinarily be sufficient to support a finding that the result of Hradek's trial would have been different but for its admission, when considered in totality, combined with other evidence, this evidence contributes to the trial court's assessment of whether there was a reasonable probability that the result of her trial would have been different.

In total, after viewing the evidence in the light most favorable to the court's ruling, as required by the applicable standards, I would conclude that the record supports the court's conclusion that all of these comments were highly inflammatory and inadmissible, thereby

---

[7] The record shows that defense counsel Contreras agreed to the wording of this instruction.

contributing to the prejudicial harm resulting from counsel's deficient representation. *See Ex parte Menchaca*, 854 S.W.2d at 133. Based on my review of the record and considering the cumulative effect of such evidence, the record shows that *but for* defense counsel playing the entirety of the call for the jury, such harmful and prejudicial statements would not have been admitted into evidence.

## C. Totality of the evidence

Finally, the trial court included a finding about the strength of the evidence of guilt, as follows: "Although a directed verdict was not granted, the State's evidence of conduct by omission and the requisite state of mind pled in the indictment of *intentional* and *knowing* was marginal." The record supports that conclusion.

Although Hradek did not testify at trial, her credibility remained a central issue in the case. Her counsel argued she was a caring mother whose baby died inexplicably as she repeatedly stated in police interviews played for the jury. While the State argued the opposite, asserting that Hradek was a neglectful and indifferent mother who overlooked a serious risk in failing to care for her child sometime during overnight hours.

*Strickland* held that the measure of prejudice is whether the deficient performance of counsel might have affected the outcome of the defendant's trial proceeding. *Strickland*, 466 U.S. at 694. In answering that inquiry, the "ultimate focus" of the prejudice standard is "the fundamental fairness of the proceeding whose result is being challenged." *Id*. at 696. "This requires the reviewing court to examine 'the totality of the evidence before the judge or jury' and ask whether 'the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018) (quoting *Strickland*, 466 U.S. at 695–96). "If the deficient performance might have affected a guilty verdict, 'the question is whether there is a reasonable probability that,

absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland*, 466 U.S. at 695).

Committing the trial equivalent of own goals, Hradek's defense counsel admitted prejudicial evidence portraying Hradek in a negative light that not only damaged her credibility but also led to a breakdown in the adversarial process. *See Miller*, 548 S.W.3d at 499. The State primarily relied on expert testimony from the medical examiner, who designated positional asphyxiation as a cause of the child's death. That theory, however, was controverted by Hradek's expert, who testified that no medical examiner, within a reasonable degree of medical certainty, could actually determine that this child was in a car seat upside. Significant to this case, the jury sent a note questioning what would occur if they could not reach a unanimous verdict, and further indicated that jurors were nearing a deadlock in their determination of the issue of guilt. *See Ex parte Menchaca*, 854 S.W.2d at 133 (finding it significant that jury was deadlocked on the issue of guilt in determining whether defendant was damaged by the trial court's deficient performance in failing to object to the admission of an otherwise inadmissible prior conviction).

But for defense counsel's admission of otherwise inadmissible evidence, there is a reasonable probability that, absent those errors, the jury would have formed a reasonable doubt respecting Hradek's guilt. In sum, I would conclude the State failed to establish on appeal that no reasonable view of the record could support a claim of ineffective assistance of counsel. *Webb*, 232 S.W.3d at 112; *Herndon*, 215 S.W.3d at 909. The majority concludes otherwise.

I respectfully dissent.

August 24, 2022

GINA M. PALAFOX, Justice

Before Rodriguez, C.J., Palafox, J., and McClure, Senior Judge
McClure, Senior Judge (Sitting by Assignment)